Your Honor, the second case on the call, 211-060, Marjorie Conn, Conn Cross Athlete, County of Kane, City of St. Charles, and Internal Combustion, LLC, as athletes, Cross of Conn's. On behalf of the F-1, Mr. Joseph Sauber. On behalf of the County of Kane, Mr. J. Patrick Yeager. On behalf of Internal Combustion, Mr. Jeffrey Torreson. And on behalf of the F-1, the City of St. Charles, Mr. Philip Shalookan. Thank you. Mr. Sauber. May it please the court. I am Joe Sauber, counsel for the appellant, the Hahn Trust. The Hahn Trust is here today to ask your honors to prohibit the use of its property by Resnick and prohibit and enjoin the City and the County from allowing any other entity from using its property. The Hahn Trust also seeks this court to dismiss the counterclaim by Internal Combustion. Was that based upon a 615 favor to stay or some affirmative defense? 615. There's absolutely no doubt that the Hahn Trust owns this property and that this property is being used by Resnick as if it owns it. Could you point that at your face, please? Excuse me? Yeah, raise it up. There you go. Clearly the Hahn Trust owns the property. Clearly it is being used by Resnick as if they own the property. It should be the burden on Resnick to tell this court and convince this court how they can use their neighbor's property as if they own it. I think if they did, they'd be the appellants. You're the appellant. You have to convince us that the judgment is wrong. Well, fine. But the basis to begin any analysis would be that everyone has to treat their property as their own and you can't treat your neighbor's property as if you own it. You can't move from your neighbor's property five acres, five acre feet of soil and put 200 feet of pipe on your neighbor's property. But didn't they give them an easement? The Hahn Trust gave King County the easement. Okay. What this case all is about is the attempt by the county to assign that easement to the Hahn Trust. Wasn't it an assignment? There's really no assignment. There's no document assigning it. They basically just grant them the permit to do the work on it. Can you assign an easement to the land? Absolutely not. You cannot assign an easement without assigning the dominant estate. That is absolutely correct. And that is just what the county has attempted to do. You don't need to assign the dominant estate. You need to transfer a title to the dominant estate, don't you? Yes. Upon the transfer of title to the dominant estate, the easement goes with it. It's automatically assigned. There are some cases where the dominant estate was split up and then the easements were allowed to follow with the various new orders in combination with the old order. Right. If the dominant estate has the easement, the subdivision of the dominant estate means every subdivided parcel of the dominant estate also gets the use of that easement. That's not what's happening here. What's happening here is the county takes the position, and it's a position the Hahn Trust agrees with, that the easement is appurtenant to the right-of-way. That is appurtenant to Ramble Road. And that's under Section 2-202 of the Highway Code. They take the position since the easement, the detention pond, is appurtenant to the road, it's part of the highway right-of-way. They then say under Section 9-113A of the Highway Code, they have the right to assign or to allow others to use their property, to use that easement. And they claim they have the right to allow residents to use it. I disagree with that position. I believe the courts have found that only those entities having the power or possessing the power of eminent domain can the county assign its easement or allow the use of its easement to. Resnick does not have the power of eminent domain. The county cannot assign to Resnick the right to use the Hahn Trust property or the county's easement. Why didn't you raise these arguments when the issue first raised its ugly head? Because I think this process was going on for two or three or four years before you sought judicial relief. I would disagree with that position, Your Honor. If you look at what Carl Shadle, the county engineer, said about that, when asked about that, he says he doesn't consider the request made to use the county property or request until the permit, application for the permit is submitted. He does not consider the request that had been made to use the easement. Because he says developers often change their mind and you never know what's going to happen with them. The city of St. Charles, Chris T., I think he's the developmental engineer, whatever he is, he works for the city, he issued the permit on behalf of the city. He took the same position. He said, as of January 21st, 2010, it was his position that Resnick had not yet requested the use of the easement. And we made our objection on January 14th. So as of January 14th when we objected, there had still been no formal request by the Resnick to use our property. Well, you said formal request. What about actual notice? Because I think... In other words, there could have been informal requests. Also, your contract with Resnick suggested that you were going to attempt to assist them in any permits that were required on the property. Now, I'm not suggesting that permits on the property means permits on your property. But at least there was some agreement that you were going to assist them such that if you saw what was going on and they were looking at your property, did you say anything like, you know, the permits you're talking about should be on your property only and not on mine? Clearly, absolutely not. We did not. It was the position of Mr. Cook, who was representing the Hine Trust at the time, but he was not aware until the letter of January 7th, 2010, from Mr. Miller, the engineer for Resnick, that he claims that's when he first became aware that they wanted to use his property. Well, the trial court never ruled on your affirmative claims, did they? Your affirmative defenses? I don't believe I found them. Pardon me, their affirmative defenses. Correct. Now, which is a good point I'd like to address then. What the trial court found is, since you have the right to use it, Resnick, your affirmative offenses I don't need to rule on. But if you look at the affirmative offense and it's of latches, the question then becomes, when does the clock begin to run on latches? The clock would begin to run on latches until they started using the property. Nor would the clock begin to run on the statute of limitations until they began using our property. We told them before they started using our property they couldn't. Therefore, before the statute of limitations or latches even began to run, they were told not to use it. And I'd cite to the court the case of Myers v. Kistner, 149 Illinois 2nd, 1, in which the Illinois Supreme Court said that actions concerning title to real estate are usually not barred by latches, short of the expiration of the statute of limitations. So when you're dealing with real estate, you don't really look at latches, you look at the statute of limitations. We have 20 years. We let them know before they even began using it. We acted well within our allotted time. You had mentioned earlier in your argument about these 5-acre feet of soil being moved. The trial court found that the easement for water retention was unlimited in scope. Correct. Do you agree with that or disagree with that? It was unlimited in scope by use by the dominant state, being Randall Road or the county of Kane. But they couldn't allow anyone else to use it. But the easement itself was unlimited in scope for the purpose of water retention for the dominant state. Correct. Yes, absolutely. I have no dispute. Now, I have this issue of the water naturally running, whether that civil rule comes into play here, with the water naturally running from the resident property on to yours. If the civil rule was in play and this court was defined that, pursuant to the civil rule, that resident was merely allowing its natural runoff to come onto our property, what the court would be finding is that then any time you are in the higher estate, the dominant estate, you can go on your neighbor's property, the lower estate, and dig a hole and put your rainwater and put pipe there. This is not the civil rule. That is what it is not. And I make that argument, and it probably didn't need to be made, but if there's one thing that this case clearly doesn't involve, it's the natural runoff from one piece of property onto the other. You don't remove five acre feet of soil to deal with natural runoff or put pipes on your neighbor's property. But the court found that as one of its alternatives. Yes, he found that. And the court cited that the dominant state can put piping, if you will, on its property to funnel the water onto its neighbor's property. They put the pipe on our property. This wasn't just changing where it enters our property. This is putting it on our property. But under the Highway Code, under section 9113L, the basis of the county saying we have the right to do it is that section of the Highway Code, 113. Under that, only the owner of the, even if the county grants consent to use its easement or to use its property, the owner of the underlying fee consent also must be uptaken. That clearly didn't happen here. That statute, in my opinion, is directly on point to the facts of this case. The county takes the position this easement is part of the highway. It takes the position under the Highway Code it has the right to assign the use of that easement or to allow others to use that easement. But even if you take those two principles as true, you can't get by the third hurdle that says you have to get the permission of the underlying landowner. That is what the resident has failed to do in this case. In my briefs, I also raised this issue that the county and the city have violated their ordinances. The ordinances are very clear that the permit for an application for a detention facility must state who the owner is and must be signed by the owner. The county was aware of this requirement. The county knew that the Hahn Trust was the owner of that property, and the county knew and the city knew that the Hahn Trust never signed that permit. Despite this, they ignore their own rules, apparently of the belief that the rules don't apply to them, and granted residents the permit to dig on our property and to lay pipe on our property. The county attempts to say this was okay because there's another section of the drainage ordinance that says that we can modify the submittal requirements. It does say that, but in order to modify the submittal requirements, the request to do so must be in writing, and the approval must also be in writing. In this case, we have no written request to modify these submittal requirements, and we have no written approval to make a submittal that is not in keeping with the ordinance. Was there a request made to your client to execute these documents? No. Was there ever a demand? A demand or request? No. As a matter of fact, though, it's not in the record. We did tell them, hey, we're not signing it, and they can't issue a permit without us signing it. It's not in the record. We were never requested to. Remember, it is the position of the appellants that they didn't need our permission at all, that we were a non-factor, that they had every right to use it, and any attempt by ours was just interfering with their rights. Even though we're the property owner, they believe that they had every right to use our property. What's our standard of review in this case? I'm sorry. I wasn't expecting that question. It's in my brief. It's the lower standard. A is manifest weight. B is clearly erroneous, and C is manifest weight. D is abuse of discretion, and E is all of the above. Which do you think it is? I'm sorry. I apologize. If I could just have a second. I know I spelled it out. I mean, the court found that there was an assignment. De novo. I believe it's de novo. And none of the above. De novo review. I'm sorry. And I believe it's de novo, because you're really dealing with a pure issue of law. I don't believe this court is asked to find any tough underlying fact. We can accept all the facts the trial court found. You accept the fact that the trial court correctly found that there was an assignment? Yes, but they can't do it. The court can find there was an assignment, but the law says you can't assign it. That's my point. It's de novo review. We all know what the court found. It found that they assigned it. What the trial court found, and obviously you read the opinion, but if you read the easement, what the trial court did is it read the easement. And it says, the easement says it's been given to the county and the county's assigned. Therefore, the county has the right to assign the easement. That's not the law. I'm not talking about the right to assign it. Whether the county actually did assign their interest in this easement to the resident property, to the resident group or IC group. Yes. I mean, it may be equivalent on the definition of assigned, but they certainly are allowing a property that is not the dominant state to use the easement. Were they allowing that as an invitee more than an assignment? I mean, the trial court found that it was an assignment. I'm sorry, I didn't hear the last of your question. The trial court found that it was an assignment. Do you believe that the county was using it more as an invitee than an assignment? No, they're not an invitee. They're saying you have the right to use our property. I mean, this isn't like just, you know, come take a walk around. Right. They're not allowing you the right to use. As I said, it's a property of the county's easement. It's a high-interest property. Even if you do find there was a valid assignment, isn't there, based on the professional incentive center versus LaSalle, don't you have to make a determination whether the alteration would place a burden on the subservient estate or would interfere with the use and enjoyment? Absolutely not. Because the assignment is, if the dominant estate is going to increase its use of the easement, then you have to determine whether that puts an undue burden on the subservient estate. But when you attempt to accommodate lands that are not the dominant, the dominant estate attempts to use its easement to accommodate other lands. That is automatically enjoinable. The courts have always held this, it's 200-year-old case law. Only the dominant estate can use the easement. I'd like to touch on that. Any other questions? Sir, your time is up. You'll have a chance to make a rebuttal. Thank you. May it please the Court. My name is Jeff Terosian from Greenberg Trog, and I represent Internal Combustion, and I'll be arguing on their behalf today. Very well. I am reserving time, Your Honors, for the City and the County to complete their arguments. Your Honors, I want to start out today with our cross-appeal on the core warranto issue, because I believe that's what this case was from the get-go. The amended complaint in this case asserts that the County lacked authority, that the defendants violated the Illinois Constitution and the local ordinances, and that the permits at issue weren't issued appropriately, that they were a violation of law to issue those permits, and that Internal Combustion acted under color of those permits wrongfully. That is a classic core warranto case under Section 101, Subsection 2. What are your damages? Your Honors, the damages would be for the plaintiff to plead damages, and there is a specific damages, but they could also get relief under the core warranto statute, but certain damages. What kind of relief do you get under core warranto? I believe, Your Honor, under Sections a few after 101, you get a judgment for a set amount of damages, and also the, I imagine, injunctive relief to forbid the governmental authority to act inappropriately or act outside its authority. That's what they're alleging here. They're alleging that the government authority didn't have the authority to do what it did, and that we, acting under color of that authority, didn't have the authority to do what we did. So, they could get damages if they can prove damages, or they can get the relief, the injunctive relief under core warranto that says, County, you can't act outside your authority. Internal Combustion, you can't act under color of that authority. But, there are certain prerequisites for such a claim. You can't just bring, any citizen can't just bring a core warranto claim without jumping through some hoops, and those hoops are fairly onerous. Well, weren't there claims that were not, that were outside of core warranto alone? The only claims at issue, there are three counts, and all of them are for injunctive relief. Now, there may be instances, Judge Mueller said that he believes core warranto was not an exclusive remedy, and that part of the decision is reviewed de novo. That was a motion for judgment on the pleadings. We believe that there may be certain instances where you have alternate legal remedies, alternate from a core warranto claim. And, in those instances, I would agree. Maybe core warranto is not an exclusive remedy. But, we don't have any of those remedies here. The only claims that were brought were injunctive, and we don't believe that you can avoid and do an end run around the core warranto statute by simply saying, oh, declaratory judgment. County doesn't have authority. Well, how is it an end run when the claim is that the county did not have authority under the easement to assign its interest to another party, to another dominant state? Well, first of all, we, just to clarify, we don't believe the judge actually has ruled explicitly that there was an assignment. There's nothing, we do not believe Judge Mueller did that. I don't believe the order explicitly says, I believe the easement was assigned. But, we, that might be a different claim. But, the core warranto, the claims at issue here are core warranto claims, that the county did not have the authority to do this. And, they didn't jump through those hoops. Now, let me jump to their appeal, because that's where the meat of the issues are. I thought you said this was a counterclaim that you were going to argue. No, no, this is our cross appeal. Okay. Our cross appeal is that the motion for judgment of the pleadings on the core warranto was improperly denied. The plaintiff's appeal, first off, he gets the standard of review wrong. The denial of an injunction is reviewed under the abuse of discretion standard. When there are factual determinations made by the judge in that denial of the injunction, which we have here, we have factual determinations made. Those determinations are reviewed under the manifest weight of the evidence standard. So, this is not a de novo standard. He cannot accept certain facts that he likes and others that he doesn't like and say, review this whole thing de novo. This is abuse of discretion with the factual determinations of the manifest weight. Judge Mueller found that the easement here was a pertinent, meaning that it attaches to the dominant estate and runs with the property. We believe that's right, but we believe that internal combustion is part of that dominant estate. Remember, the identity of the dominant estate is not determined by who the easement is given to. It's determined by what does the easement relate to. Testimony trial made clear that the dominant estate is the entire Randall Road project area, which includes all of the proposed development that is going on in Randall Road. Internal combustion is the dominant estate. It would be a circular argument if you had to say, well, let's look to see who the easement went to first. Oh, it went to the county. Then let's look to see what the county owns as part of the property. If I understand your argument correctly, then you could probably allow someone abutting your property that isn't part of Randall Road access to the same retention pond on the basis that as part of the dominant estate, you have the right to, quote, unquote, use it to the extent that the county had the extent to give it to you. We believe that the easement was given to the dominant estate, and we are part of that dominant estate. And my point is, using logic, it could go all the way to the Mississippi River as long as the lands were contiguous, claiming that everybody is a part of the dominant estate. Well, if the contrast estate went all the way to the Mississippi River, we would have the right to still drain into the part that's right adjacent to us, sure. The easement, I don't believe the easement would be carved out in such a way that we only have access to a certain portion of the land. If the entire parcel goes to the Mississippi River, we have the right to drain as we drain. Your Honor, even if it's engrossed, even if Judge Mueller got it wrong and it's engrossed, then the easement here is assignable because it deals with commercial public utility rights. And the city's expert testified that stormwater drainage is a public utility right since it implicates public health, safety, and welfare. There is no dispute on the plaintiff's side. They have no expert. They have no evidence at all to say it's not a public utility right. So even if it is engrossed, Judge Mueller did reference the assignability right in the easement. If it's a public utility, why are pipes coming from your property instead of from Randall Road? Well, and I think that relates to the civil rule, Your Honor, because the HON Trust misstates what the civil rule is. But we have a natural, besides all the easement appurtenant because of this easement granted to the county, we have a natural easement appurtenant to have water flow from our dominant estate to the surveying estate. I thought that under the rights between up and downstream, the downstream property owner doesn't have the right to impede the flow. I don't know that it claims that the upstream owner has the right to enhance the flow on the downstream owner. Is there a law to that effect somewhere? Because I don't remember seeing it anywhere. The case law says that the dominant estate can have its water flow naturally out to the surveying estate. The case law also says that the surveying estate doesn't have to accept that water in different, very unnatural quantities or times. And so what that means is the dominant estate can't collect its rainwater for a year and say this rainwater would eventually naturally flow to the surveying estate. It can't collect it for a year and then dump it while the surveying estate is having a wedding. It cannot do that. That would be unnatural. But what it can do, and this is what the Larson case said, what it can do, the dominant estate can construct pipes on its property and effectively carry the water to the surveying estate even though having pipes on your property and draining it that way may not be completely natural. It's still allowable under the civil rule because that's the way the water is going to go anyhow. You can't collect it and save it for a year and dump it in the middle of a party, but you can take action at it more effectively. Before your property was developed, how many acre feet of runoff occurred as opposed to after the property was developed and nonpermeable aspects of the property, such as blacktop, concrete, roofs, and so on, were placed on the property? Was there an increase in the acre footage of water coming off your property at a given rate per minute, say? Absolutely not. The testimony of trial from both Mr. Teed, who's the city's engineer, and Mr. Miller, who's the internal combustion's engineer, and that testimony was uncontroverted, was that there was no difference in water flow pre-construction versus post-construction. And I will take issue with one fact. There was impervious pavement on the property prior to any of this construction. Obviously, it's different now because now there's a building and you're digging a foundation for it. But there was blacktop on the property before. And both Mr. Teed and Mr. Miller said, look, there's no difference. The water still – we're not getting water from somebody, some place else, and then putting it on our property and then putting it on a high-trust property. Who took the land out and the dirt out of the Serbian estate and who put the pipes out of the Serbian estate? Was it you or the county or the city? We did. The county had the right to do whatever it needed to do to build and expand the drainage pond. The county contracted – and that's pursuant to the easement and pursuant to the agreement with the contract. The county then contracted under the intergovernmental agreement with the city to have the city or its agents come on the property and do the work for it. The county is not a person. The county is not going to get out there with a shovel, with a sign on its head saying, I'm the county, I'm digging a trench here. The county can have someone else, as its agent, do the construction, do the work for it. On behalf of the county. On behalf of the county. So the county contracted with the city to do it and the city or its agents can do it. And internal combustions engineers were its agents for the purposes of going on the property, taking out five-acre feet, and putting in pipes for my property. Thank you, sir. Your time is up. Thank you, Your Honor. Good morning, Your Honor. Floyd Leukehans on behalf of the city of St. Charles. I think what's kind of being lost here, and it kind of goes to the question, did Judge Mueller find an assignment? Nowhere in that order do you say, can you find him saying, I find that it was assigned. I actually thought it did, Justice Shostak. I know you were looking for it, as I was. Here's why it doesn't say that. The use was in limited scope by King County. That's what Mr. Sautter said. He's absolutely correct. That's what the court found. The land wasn't assigned or the property wasn't assigned. It was transferred per an intergovernmental agreement under the Intergovernmental Cooperation Act. As you know, the courts have been, and the law is very clear, that. Well, but then down the road, did the city then assign this interest to Resnick? No, we contracted with Resnick. That's correct. But we did not assign our. Understanding, part of this detention pond, this additional detention pond, is being operated for Resnick. There's no doubt about it. Part of it's being built for the county on top of. I mean, there's another. The county built, I think, 11 acres of, 11 acre feet, approximately. I don't remember the exact number. Then they needed more for their future roundabout. They contracted with us per an intergovernmental agreement to build more. We allowed Resnick to build some. And they, or they, we contracted with Resnick to build them more. They also built for their own property, no doubt about it. And they built for us. Well, I mean, it seems to me like an assignment would have been a better argument for you under the agreement. And it seemed like we were all operating to some degree under that premise, that there was some sort of assignment, tacit or otherwise. Because the agreement allowed for an assignment. Whereas now you're saying there was no assignment. The judge found no assignment. So, therefore, we as the county delegate to the city the right to use it. And the city says, Resnick, come on, let's use it. I mean, if we're talking about a private individual, we all realize that the dominant state can't expand this for the benefit of other lands, correct? I don't know if we agree with that, Your Honor. But I do know that, here, whether you call it an assignment, which is what Mr. Trojan has been arguing, discussing, or whether you call it an intergovernmental cooperation act, any power the county has, they can assign to us. That's very, very clear. Let me read to you what the court said. The court said, found that the easement was, quote, available not only to Kane County as grantee, but also to the county's heirs, successors, and assigns. And, unquote. Then, since that, and that, since there were, quote, no capacity limitations applicable to the county's assigns, there was no reason for IC to seek plaintiff's approval. So, maybe he didn't come right out and say it's an assignment, but he certainly inferred, which I think we're finding the trial court's doing a lot this morning. You're not an heir and you're not a successor, are you? Or are you a successor under the theory that there's an intergovernmental agreement? We're a successor under the theory there's an intergovernmental agreement. Are you also a successor insofar as owning title to the easement and the Randall Road property? No. I don't believe the City of St. Charles is. So, you're relying on the intergovernment. He was intergoverning. I am, yes. And I know my time's about up, but I think it's, one thing needs to be very clear about this. The court did not decide on laches because he didn't need to get there. But for two and a half years, the evidence is that Jim Cook, who was the executive of the state, knew that they were planning on doing this. There's written documentation. There's letters. There's evidence. There's testimony from two different people about that, none of which is contradicted. Mr. Cook just says, I don't recall whether it happened or not. So, he sat on his rights for two and a half years, let Resnick go through with the contract. His client makes approximately $4 million, or actually more, I think it was $6 or $7 million. And after he makes the $6 or $7 million, he says, oh, guess what, I want some more. That's what happened in this case. That's the essence of this case. And this court should not allow that to happen. And whether Justice Mueller, Judge Mueller got to that part or not, he didn't need to get there. But that's the uncontradicted evidence in this case. Thank you. Thank you. Mr. Jaeger. Good morning, Your Honors. May it please the Court, Patrick Jaeger on behalf of the County Cain. There is really just two issues that I'd like to touch on. And the first one relates to the appellant's arguments relative to the fact that the County of Cain could not, pursuant to the Highway Code, I believe it's Section 5-9-113, give its consent to the City of St. Charles or their agents to use highway right-of-way that is part of Ramblin' Road. And I think, you know, if you look at the statute, it is unequivocal and it's clear. The county is granted the right to consent for others to use county highway right-of-way. And in this instance, the agreement between the County of Cain and the City of St. Charles that was entered into in December of 2006 clearly unequivocally grants that consent to the City of St. Charles. Now, the appellant had indicated that in order to do so, in order for the city to use the county highway right-of-way, that they had to have the permission of the underlying property owner. And the only question that comes into my mind as it relates to that assertion is what permission? What right, if any right, did the appellant retain in the easement premises? If you look at the easement document itself, it's clear, it's unequivocal, that the property owner, the appellant, has absolutely no right to use the easement premises for any reason. Well, wouldn't it be the right to not have water from another land other than the downtown estate being diverted or flown on your property in Cain there?  Yes, yes, that's absolutely correct. They still own the property. However, but in this particular instance, there was a natural flow from the downtown estate into the detention facility to begin with. The second issue that the appellant raised relates to the extreme lengths that the county went to to violate its own stormwater ordinance. The appellant stipulates that the easement premises is obviously located within the city of St. Charles. The appellant also stipulates the fact that the city of St. Charles has adopted the identical stormwater management plan that the county of Cain has adopted. As it turns out, pursuant to the stormwater management enabling legislation, the county of Cain can't, or rather I should say in quote, shall not enforce rules and regulations adopted by the county in any municipality located wholly or partially within the county that has a municipal stormwater management ordinance that is consistent with and at least as stringent as the county-planned ordinance. So in this particular case, all of the appellant's arguments relative to the county of Cain violating its own stormwater ordinance has absolutely no merit. It's irrelevant. The county doesn't have jurisdiction in this particular instance. And that is pursuant to the county's code, 55 ILCS section 1062. You're saying that these things didn't happen? I'm sorry, Your Honor, what things didn't happen? You're saying he has no right to complain. Now, he has the right to complain. He may be wrong, but he has the right to complain. That's correct, Your Honor. You know, if you dug another 15 acre feet, don't you think he might have the right to complain on the basis that maybe you don't need that much and you're going beyond the grant for the easement, which was all the retention that you need for Randall Road because apparently now you're bringing in water from off of Randall Road and you're funneling that water onto Randall Road and now it's going to come down Randall Road and it's going to come in here. I mean, if you're going to increase the usage of an easement on a serving estate, a serving estate always has the right to complain about it. So when you say they don't have a right, they have a right. They may not be able to prove that they've been wrong, but they have the right to bring this clause. Yes, Judge, and I may have misspoke. No, you didn't misspoke, but the context of what you were saying was that, hey, this is carte blanche. At least that's the impression I got from what you were saying. No, they absolutely have a right to complain, Judge. And initially what I was referring to as it relates to the county stormwater ordinance and violating that, that matter is, I mean, there's no issue there. Does the stormwater ordinance give the county the right to give third parties the right to retention ponds wherever the county has retention ponds? Absolutely not. That right comes from the Illinois Highway Code. Okay. I think your time's probably up, even though it was fun. Okay, Judge. Thank you. Mr. Sauber, you have the right to rebuttal. Thank you. Mr. Sauber, before you go on, can you just address one issue? Your opponent states that Jim Cook knew for two years that this was going to be done, and he said nothing. And then all of a sudden, I think the way I understand it, his position is that Mr. Cook now figures, hey, I can make a little bit more money. Did he know? And if he knew, why didn't he say anything about it for two years? It is Mr. Cook's position, his testimony at trial, what he has always said is, I never knew until I got the letter, the January 7, 2010 letter from Mr. Miller, that residents wanted to use the Hahn Trust property for its stormwater retention. That's why he never objected before that. On January 14th, he wrote and made it clear that the Hahn Trust objected to anyone using its property. This is five months before they actually used the property. If laches is going to be applicable here, then what the court would have to find, that no other court has ever found, is that laches begins to run as soon as you know or should know that someone intends to violate your rights. I think you have to wait until the violation actually takes place before laches runs and you have the obligation to object. We're talking estoppel here instead of laches. Maybe based upon a reliance of your failure to respond in the face of notice, your client should be estopped from raising this claim. I agree, laches may not apply. But there are other affirmative defenses and estoppel is one of them. If this, if they're saying estoppel. I'm not a fact finder. I know, but in the estoppel argument, you had, presuming then you would have to say that they changed their position on our conduct to make estoppel applicable. They didn't. Remember, they take the position they didn't need our permission. Even when we told them not to, they still went forward. This isn't a case where you're asking for a declaratory judgment that we're estopped or our laches have run. If we told them to stop five months later, they're out there digging. Further, why didn't they put it in the contract? Why didn't they make the contract between internal combustion, excuse me, between Resnick Gap's position group and the Hahn Trust contingent upon them getting permission from the county? They never came out and said that. And there's another issue along those lines. I don't want to spend all my time addressing this, but where was the duty on Mr. Cook to speak? Is there actually a duty in that situation to speak that exists in the law? I am aware of none. Once you're told that, you have some affirmative duty to speak. I don't believe so. There was a recent First District case regarding a woman who supposedly gave an easement for what she thought was going to be silos. It turned out that it was a pig farm. She claimed it was fraud. And the appellate court found that there was no fiduciary duty, and therefore there was no duty to disclose, and therefore there was no fraud. That's my part, no duty to speak. Well, a pig farm is a little bit different. Well, okay. But moving on to three of the other arguments that were made. This is not a case involving a horse. A vehicle involving a pig farm? Yes. Only driving by. Okay. I'd like to address a few of the arguments made by counsel, though. Clearly, the land sold to resident was not part of the dominant estate. The language in the easement makes it clear that the Hahn Trust is to have no right to use the county's detention or the county's easement. It's an exclusive easement. The Hahn Trust gets, excuse me, Resnick gets its property from the Hahn Trust. So by definition, the property given to the Hahn Trust or sold to the, excuse me, given to Resnick by the Hahn Trust excludes the dominant estate. And you can't have an easement on your own property, so we could never do an easement retaining one on our property that was later sold to Resnick. Neither the testimony of Mr. Teed or Mr. Miller. What's your take on Mr. Lukian's take that the trial court never really said this was an assignment? It makes an interesting issue, then, by what right do they really have to go on the property? How did they get that right if it wasn't assigned to them the right to do so? Well, according to their governmental agreement. But didn't the government agreement, as Your Honor indicated, assign them the right to use up to four acre feet for adjacent development? Isn't that, I didn't look, I didn't have time, but I think the word assign is even in that. That they are assigning the right to adjacent property. So, and if you read the court's opinion, it all hinges on the word assign in the easement as giving them the right to allow others to use it. And as Your Honor also pointed out, by what right, if it wasn't by assignment from the county, does Resnick claim that it can use the Hahn Trust property? Again, the civil rule is just not applicable. But they keep claiming that this water just ran onto their property, therefore they have the right to allow it to run on. Maybe that was true. But you didn't have the right to remove five acre feet from our property under the civil rule. And you don't have the right to put pipe on our property under the civil rule. I presume my time is short and I'm almost done, so I'd just like to conclude. You know, this case involves the protection of property rights. The courts have always protected property rights. In fact, it's one of the proudest features of our court is the protection of property rights. This case, once again, calls upon this court to protect the safety of private property rights. The Hahn Trust is the owner of the property. Resnick is now treating it as its own, apparently with the permission of the county and the city. This must be enjoined. We must, again, affirm the property rights of the Hahn Trust. And therefore, we ask you for an injunction directing the Hahn Trust, and all I can say is directing the appellees, to return the position of the Hahn Trust property to that which it was in before it was used by Resnick, enjoining the county and the city from allowing anyone else to use the property. I believe that there was, if I remember correctly, 6 1⁄2 feet. 4 or 5 was supposed to be for internal combustion, and 1 1⁄2 was for the county or county. Correct. And so, you're going a little bit overboard if you're saying we're supposed to go back to square one. At least, were we to grant relief, we would still allow the county to have that 1 1⁄2 extra square footage, or acre footage, would we not? No. Why? Here's why. You see, remember, the Hahn Trust has the right to move the easement. That's what the whole reason it was an easement was for, instead of giving them the feet. And we have to give the county the amount of acre feet they have and need. We have to give them the same easement they had. The easement they have now, if you returned it, was 11 feet as opposed to 12.6. So, when we go to return the property to the condition it was in, or to reclaim it, we have to find comparable other detentions. So, therefore, the new detention we would have to provide them would be the same 11 feet, not the 12.6. We'd have to provide them 11.6 acre feet of detention on property that could be expanded to the 12.6. Well, does that then mean that you build something 11 acre feet someplace else and you allow 1.6 acre feet to fill up the parking lot of the new property that you have? No. The 1.6 is for the future expansion of Randall Road, which hasn't taken place yet. The county says, build us our future need. We don't have to provide for their future need when the high trust was to provide the county with a new detention pond. We could provide them with their current need, which is the 11 acre feet, on property that could go up to the 12.6. Okay. Saving us 1.8 acre feet of soil. Any other questions? Thank you. Thank you. Court's in recess. We have another case on the call.